**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-02317-NYW

LORI CERDA,

      Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

      Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

      This civil action arises under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c) for review of the Commissioner of Social Security Administration's ("Commissioner" or "Defendant") final decision denying Plaintiff Lori Cerda's ("Plaintiff" or "Ms. Cerda") applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Parties' consent [#12], this civil action was assigned to this Magistrate Judge for a decision on the merits. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. After carefully considering the Parties' briefing, the entire case file, the Administrative Record, and the applicable case law, this court respectfully **AFFIRMS** the Commissioner's decision.

**BACKGROUND**

      Ms. Cerda, born April 3, 1972, alleges she became disabled on or about September 8, 2016, at 44 years-of-age, due initially to human immunodeficiency virus ("HIV") and later due to worsening arthritis, fatigue and lack of energy, and pain in her knees and back. *See* [#11-3 at 61-

64, 79; #11-4 at 95-99; #11-6 at 179-80, 194, 220, 230, 236, 265].[1]  Ms. Cerda alleged she suffers from diarrhea caused by her HIV; that she has trouble sleeping because of headaches and stomachaches, which causes her to feel very tired; that her heart races; and that she suffers from depression.  [#11-6 at 221, 236, 265].  Because of her ailments, Ms. Cerda explained that lies down for most of the day, though she cares for her elderly mother at least 90 minutes each day and completes housework if she was feeling better.  *See* [*id.* at 222-23].  According to Ms. Cerda, her ailments prohibit her from exercising, cause her to feel dizzy and depressed, and interferes with her ability to perform daily hygienic tasks as well as most physical activities and postures, but does not affect her ability to drive or go to the grocery store.  *See* [*id.* at 223-28, 230, 265].

Ms. Cerda protectively applied for DIB and SSI on or about October 13 and 18, 2016, respectively.  *See* [#11-3 at 61-62; #11-5 at 148-158].  The Social Security Administration denied Plaintiff's SSI and DIB applications initially on or about January 27, 2017.  *See* [#11-3 at 61-62; #11-4 at 95-99].  Ms. Marts requested a hearing before an Administrative Law Judge ("ALJ"), [#11-4 at 100-16], which ALJ Debra L. Boudreau (the "ALJ") held on August 21, 2018, *see* [#11-2 at 33].  The ALJ received testimony from Plaintiff and vocational expert Dennis Duffin, Ph.D. (the "VE").

Ms. Cerda testified that she last worked as a caregiver for her mother, who suffers from multiple sclerosis, but stopped in or about January 2018.  [#11-2 at 38-40].  Before that, she worked as a caregiver for senior citizens until she was involved in a severe traffic accident in 2005.  *See* [*id.* at 41-42].  As to her ailments, Ms. Cerda testified that she cannot do things with her children;

---

[1] When citing to the Administrative Record, the court utilizes the docket number assigned by the CM/ECF system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page.  For all other documents the court cites to the document and page number generated by the CM/ECF system.

that she stays home often because she is fatigued and needs to sleep; that she can no longer walk a mile because of back pain; that she has issues standing and sitting; that she has issues with incontinence; that she has a weakened nervous system; and that her children help with the groceries and yard work.  [*Id.* at 44-48, 51-54].  Ms. Cerda testified that she suffers from, and receives treatment for, her depression, which she attributes to her deteriorating health.  [*Id.* at 49].  Regarding her treatment, Plaintiff attested that she takes over 20 pills per day, which cause fatigue, vomiting, mouth dryness, and diarrhea.  [*Id.* at 49-53].

The VE also testified at the hearing.  The VE first summarized Ms. Cerda's past relevant work as nursing aide, a specific vocational preparation ("SVP")[2] 4 and a medium exertion level; restaurant host, SVP 6 and a light exertion level; waitstaff/server, SVP 3 and a light exertion level; fast foods worker, SVP 2 and a light exertion level; and home care provider, SVP 6 and a light exertion level.  [*Id.* at 55].

The VE then answered several hypotheticals about the work an individual could perform subject to various functional limitations; for each, the VE attested that his testimony with consistent with the Dictionary of Occupational Titles, supplemented by his experience.  [*Id.* at 58].  First, the VE testified that an individual, with no physical or exertional limitations but limited to simple routine tasks, with sustained concentration, persistence, and pace, and who could tolerate occasional interactions with the public, co-workers, and supervisors, could not perform any of Ms. Cerda's past relevant work experience.  [*Id.* at 55-56].  But, the VE testified, such an individual

---

[2] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Vigil v. Colvin*, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015) (citing Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991)); 1991 WL 688702 (G.P.O.). The higher the SVP level, the longer time is needed to acquire the skills necessary to perform the job. Jeffrey S. Wolfe and Lisa B. Proszek, SOCIAL SECURITY DISABILITY AND THE LEGAL PROFESSION 163 (Fig. 10-8) (2003).

could perform jobs as a field crop harvester, landscape laborer, and cleaner II—each a SVP 1-2 and medium to heavy exertion.  [*Id.* at 56].  Second, that a similar individual, further limited to 10-20-pound lifting restriction, six hours of standing, walking, and sitting, and frequent postural manipulations, could perform the light exertion jobs of housekeeping/cleaner, cafeteria attendant, and "power screwdriver operator also known as a nut runner"—each a SVP 2.  [*Id.* at 57-58].  Finally, the VE testified that two to three absences per month or being off-task at least 10% of the workday would preclude all competitive employment.  *See* [*id.* at 58-59].

On November 21, 2018, the ALJ concluded Ms. Cerda was not disabled under the Act because, based on her RFC, age, education, and work experience, there existed jobs in the national economy Ms. Cerda could perform.  *See* [*id.* at 25-26].  Ms. Cerda requested Appeals Council review of the ALJ's decision, which the Appeals Council denied, rendering the ALJ's decision the final decision of the Commissioner.  *See* [*id.* at 1-8].  Plaintiff sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on August 14, 2019, invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 1383(c)(3).

## LEGAL STANDARDS

An individual is eligible for DIB benefits under the Act if she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1).  For purposes of DIB, the claimant must prove she was disabled prior to her date last insured.  *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007).  SSI is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act.  42 U.S.C. § 1382.  The earliest a claimant can receive SSI is the month following the month within which the claimant filed her application, and thus the claimant must establish that

she was disabled on or prior to her application date.  *See* 20 C.F.R. §§ 416.200, 416.335; *see also id.* § 416.912(b)(1) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application").

An individual is determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 13382c(a)(3)(B).  The disabling impairment must last, or be expected to last, for at least 12 consecutive months.  *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.905.  And when a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  These include:

1.  Whether the claimant has engaged in substantial gainful activity;

2.  Whether the claimant has a medically severe impairment or combination of impairments;

3.  Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4.  Whether the claimant has the Residual Functional Capacity ("RFC") to perform her past relevant work; and

5.  Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail).  "The claimant bears the burden of proof through step four of the analysis[,]" while the Commissioner bears the burden of proof at step five.  *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In reviewing the Commissioner's final decision, the court limits its inquiry to whether substantial evidence supports the final decision and whether the Commissioner applied the correct legal standards.  *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1178 (10th Cir. 2020) (internal quotation marks omitted); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.").  "But in making this determination, [the court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's."  *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

## ANALYSIS

On appeal, Ms. Cerda challenges the ALJ's decision denying her DIB and SSI applications for several reasons.  She argues the ALJ erred in (1) designating as non-severe impairments Plaintiff's HIV, medication side effects, bladder control and incontinence, urinary tract infection, and chronic cystitis; (2) failing to consider the effects of Plaintiff's non-severe ailments on her RFC; (3) failing to accord controlling or at least deferential weight to Plaintiff's treating sources'

medical opinions; (4) finding Plaintiff has the RFC to perform the full range of light exertion work; (5) assessing Plaintiff's credibility; and (6) failing to supplement the record—all of which culminated in the erroneous conclusion that Plaintiff is not disabled.  [#15].  I consider each in turn.

## I.      Step Two

At step two the Commissioner determines whether a claimant has any severe physical or mental impairments.  *See Williams*, 844 F.2d at 750.  "To find a 'severe' impairment at step two requires only a threshold showing that the claimant's impairment has 'more than a minimal effect on [her] ability to do basic work activities.'"  *Covington v. Colvin*, 678 F. App'x 660, 664 (10th Cir. 2017) (quoting *Williams*, 844 F.2d at 751).  But "the claimant must show more than the mere presence of a condition or ailment."  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).  Indeed, an ALJ may conclude that an ailment is not a medically determinable impairment—a particularly important finding, as the ALJ must consider only *medically determinable impairments* (severe or not) at subsequent steps.  *See Cook v. Colvin*, No. CV 15-1164-JWL, 2016 WL 1312520, at *4 (D. Kan. Apr. 4, 2016) ("Limitations attributed to impairments which are medically determinable but are not severe must be considered at later steps in the evaluation, whereas alleged limitations attributable to impairments which are not medically determinable must not be considered at later steps.").  conflates

At step two the ALJ concluded that Ms. Cerda had the following severe impairments:

- lumbar and cervical degenerative disc disease,

- degenerative joint disease of the bilateral knees,

- adjustment disorder with feature of anxiety and depression,

- coronary artery disease,

7

- history of heart attack,

- ischemic cardiomyopathy,

- left ventricle thrombus,

- diabetes mellitus, and

- obesity.

[#11-2 at 16].  Ms. Cerda argues that the ALJ erred at step two by designating as non-severe impairments Plaintiff's HIV, medication side effects, bladder control and incontinence, urinary tract infection, and chronic cystitis.  *See* [#15 at 19-22; #19 at 3-4].  Any such error in this regard, however, is harmless.

In *Allman v. Colvin*, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") explained that at step two "a claimant need only establish, and an ALJ need only find, one severe impairment[,]" as a finding of one severe impairment requires the ALJ to proceed to the next step considering *all* of the claimant's ailments (severe or not) anew.  813 F.3d 1326, 1330 (10th Cir. 2016).  "Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds at least one other impairment is severe."  *Id.*; *see also Smith v. Colvin*, 821 F.3d 1264, 1266–67 (10th Cir. 2016) (holding as harmless error the ALJ's failure to find a severe left shoulder impairment at step two when the ALJ considered shoulder impairments in assessing the plaintiff's RFC); *Howard v. Berryhill*, No. 17-CV-00276-RBJ, 2017 WL 5507961, at *4 (D. Colo. Nov. 17, 2017) ("While it certainly would have been prudent for the ALJ to consider Ms. Howard's chronic pain syndrome diagnosis at step two . . . the ALJ's failure to do so is not reversible error under *Allman* because she determined that two of Ms. Howard's other impairments were severe.").

As mentioned, the ALJ found nine severe impairments and "proceeded with the analysis as required." *Troe v. Berryhill*, No. 16-CV-02794-MEH, 2017 WL 2333101, at *7 (D. Colo. May 30, 2017) (relying on *Allman*, 813 F.3d at 1330). Thus, the ALJ did not err at step two by failing to find any further severe impairments.

## II.     The RFC Assessment

In formulating a RFC assessment, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). A claimant's RFC is the most work the claimant can perform, not the least. 20 C.F.R. § 404.1545; SSR 83-10. "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")). But the ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," so long as the RFC assessment is consistent with the record and supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004); SSR 96-08p. If substantial evidence supports the RFC assessment, the court will not reverse the ALJ's decision even if it could have reached a different conclusion. *Ellison*, 929 F.2d at 536.

The ALJ determined Ms. Cerda retained the RFC to:

lift/carry 20 pounds occasionally and 10 pounds frequently; can stand/walk approximately 6 hours in an 8-hour workday; can sit approximately 6 hours in an

8-hour workday; and can frequently climb, balance, stoop, kneel, crouch, and crawl. She has no manipulative, visual, communicative, or environmental limitations[.] She is able to understand and remember simple, routine tasks that can be learned and mastered in 30 days with a brief demonstration. She can sustain concentration, persistence, and pace for those simple, routine tasks over a typical workday and workweek. She is able to tolerate occasional and superficial type interactions with the general public, coworkers, and supervisors. She is able to tolerate task[] changes, can make simple work decisions, is able to travel, and can recognize and avoid work hazards.

[#11-2 at 19]. Ms. Cerda raises a host of challenges to the ALJ's RFC assessment.[3] I consider these below, and I respectfully conclude that the ALJ did not err in formulating Ms. Cerda's RFC.

### A.    Consideration of Non-Severe Ailments

Ms. Cerda first contends the ALJ failed to consider Ms. Cerda's non-severe ailments, i.e., her HIV, medication side effects, cardiology issues, and urinary issues, when assessing Ms. Cerda's RFC. *See* [#15 at 22-23; #19 at 4]. She argues the record contains excessive documentation of her HIV and related medication, specifically, Triumeq, and Ms. Cerda routinely sought treatment for her medication side effects and her urinary issues. *See* [#15 at 24-25]. According to Ms. Cerda, the ALJ failed to account for the limitations, if any, these non-severe impairments posed on Ms. Cerda's functionality. I respectfully disagree.

As mentioned, the ALJ must consider all medically determinable impairments, whether severe or not, when assessing a claimant's RFC. *See Ray*, 657 F. App'x at 734. In doing so, the ALJ must explain how evidence supports her specific functionality findings. *See Hendron*, 767 F.3d at 954. And the ALJ may not simply rely on her step two conclusions that ailments are non-severe to disregard those ailments when formulating a claimant's RFC. *Wells*, 727 F.3d at

---

[3] In challenging the ALJ's RFC assessment, Ms. Cerda conflates many of her arguments but designates them as distinct challenges. For clarity, the court's analysis groups Ms. Cerda's challenges based on the nature of the challenge asserted, not necessarily by the categorization designated by Ms. Cerda.

1068-69.   If, however, substantial evidence supports the RFC assessment, the court will not second-guess that determination.  *See Frantz v. Astrue*, 509 F.3d 1299, 1300 (10th Cir. 2007).

Here, as the Commissioner argues, *see* [#18 at 12-13], the ALJ properly addressed Ms. Cerda's non-severe impairments in crafting Ms. Cerda's RFC.  At step two the ALJ discussed the medical evidence documenting Plaintiff's HIV, medication side effects, and urinary issues, among others, and concluded those ailments did not more than minimally affect Ms. Cerda's ability to perform basic work tasks and were thus non-severe.  *See* [#11-2 at 16-17].  Then, in assessing Plaintiff's RFC, the ALJ began by recounting Ms. Cerda's own complaints concerning her ailments, including her HIV, worsening knee and back pain, heart problems, depression, urinary issues, and medication side effects.  *See* [*id.* at 20].  The ALJ, however, concluded that the objective medical record belied the alleged severity of these ailments and their limitations on Ms. Cerda's functionality.  [*Id.*].

In so concluding, the ALJ first discussed the relevant medical evidence regarding Ms. Cerda's back and knee pain and diabetes, noting that Ms. Cerda's physical examinations were largely normal despite degenerative changes in her spine and knees.  [*Id.* at 20-21].  The ALJ then thoroughly discussed cardiology issues: she explained that Ms. Cerda suffered a heart attack in March 2018 and received treatment; that Ms. Cerda complained of fatigue at a follow-up cardiology appointment but also reported that she was trying to walk at least a mile per day; that Ms. Cerda later did not complain of chest pain and had unremarkable examination results; and that Ms. Cerda showed improvement by May 2018, including that she was walking over a mile per day (and was encouraged to do more) and had no cardiovascular complaints.  *See* [*id.* at 21].  Next, the ALJ explained that, in October 2016, Ms. Cerda "complained only of sinus issues, knee and elbow arthritis, urinary frequency and incontinence, and HIV positive status;" then, in November 2016,

Ms. Cerda "sought emergency treatment for abdominal pain and nausea, but complained of constipation rather than diarrhea"; that medical records document "only ongoing treatment for diabetes, side effects from HIV medications, and emotional problems with her HIV diagnosis but no significant abnormal findings on examination." [*Id.* at 22].

After reciting this evidence, the ALJ concluded that "[a]lthough the claimant does suffer from multiple orthopedic impairments, uncontrolled diabetes, cardiac impairments, and obesity," Mr. Cerda was able to lift and carry 10-20 pounds and sit, stand, and walk for 6 hours out of an 8-hour workday. [*Id.*]. The ALJ then connected that determination to the relevant medical evidence supporting her conclusion. *See* [*id.*]. Nothing more was required of the ALJ. *See Howard*, 379 F.3d at 947, 949 (explaining the ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before [she] can determine RFC within that category."); *Hendron*, 767 F.3d at 954 (explaining that the court will uphold the ALJ's RFC determination so long as the ALJ supports her reasoning with medical evidence).

To be sure, Ms. Cerda is correct that the record contains several mentions of her non-severe impairments, her complaints about those non-severe impairments, as well as prescribed treatment for her various diagnoses. *See, e.g.*, [#11-7 at 302-05, 313-16, 330-32, 386-88; #11-8 at 448-51, 454, 459-62, 468, 476-77, 482, 496; #11-9 at 497-509, 549-55; #11-10 at 567-81, 582-85, 619-22, 625-28, 636-40, 642-46, 653-55; #11-11 at 697-704, 706, 718, 728-31, 739-42, 744-48, 750-54]. But, as the ALJ highlighted, many of these same records contain mostly normal physical exam and objective testing findings despite Ms. Cerda's subjective complaints. *See generally* [*id.*]. To the extent there are internal inconsistencies in these records, it is the ALJ's (not the court's) responsibility to resolve those evidentiary conflicts, *see Allman*, 813 F.3d at 1333, and this court may not "displace the agency's choice between two fairly conflicting views," *Zoltanski v. FAA*,

372 F.3d 1195, 1200 (10th Cir. 2004) (brackets omitted). Nor can the court say that the ALJ impermissibly cherry-picked evidence that only supported a finding of not disabled. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (explaining that an ALJ must discuss evidence supporting his decision, "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

Moreover, much of the evidence Ms. Cerda cites simply establishes the presence of her non-severe impairments. But a "[d]iagnosis of a condition does not automatically mean that the claimant is disabled; what matters is whether the condition results in work-related limitations." *Paulsen v. Colvin*, 665 F. App'x 660, 668 (10th Cir. 2016). Indeed, the burden lies with Ms. Cerda to "show more than the mere presence of a condition or ailment," *Hinkle*, 132 F.3d at 1352; *see also Cochran v. Colvin*, 619 F. App'x 729, 731-32 (10th Cir. 2015) (rejecting Ms. Cochran's contention that the ALJ committed harmful error by failing to consider her limited hand functionality at step four because the evidentiary record did not support her contentions), but rather that her non-severe impairments cause specific functional limitations, *see Wilson v. Astrue*, 602 F.3d 1136, 1140-41 (10th Cir. 2010). This she has not done. *See Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) ("[I]n cases such as this one where the claimant was represented by counsel at the hearing before the ALJ, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." (internal quotations omitted)). Accordingly, I find no error in the ALJ's consideration of Ms. Cerda's non-severe impairments.

**B.      Weighing Medical Source Opinions/Supplement Record**

The ALJ must also address medical source opinions when formulating a claimant's RFC. *See Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015).  The Social Security Regulations afford a treating source opinion more weight than a non-treating opinion if the treating opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2); *cf. Garcia v. Colvin*, 219 F. Supp. 3d 1063, 1071 (D. Colo. 2016) ("The distinction between *not inconsistent* and *consistent* is significant.  The treating source opinions should not be accorded controlling weight if they contradict other substantial evidence in the record, but they do not necessarily have to reach the exact same conclusions."  (emphasis in original)).   Indeed, the opinion of a treating or examining source is in no way "dismissable," *see Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012), and may be dismissed or discounted only upon an examination of the factors provided in the regulations and "specific, legitimate reasons for rejecting it[,]" *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).  But even if the ALJ does not afford the treating source opinion controlling weight, the ALJ may owe that opinion deference when considering:

1.  the length of the treatment relationship and the frequency of examination;

2.  the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

3.  the degree to which the physician's opinion is supported by relevant evidence;

4.  consistency between the opinion and the record as a whole;

5.  whether or not the physician is a specialist in the area upon which an opinion is rendered; and

6.  other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quotation marks omitted).  Ultimately, the ALJ's findings must be "sufficiently specific to make clear" the weight assigned to the treating

source opinion and the reasons for that weight. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks omitted).

Ms. Cerda also takes issue with the ALJ's RFC assessment because the ALJ accorded "very little weight to the opinions of the claimant's primary care provider, Precious Sheryll Castro-Flores, M.D." [#11-2 at 23]; *see also* [#15 at 30-32; #19 at 2-3]. Ms. Cerda argues that Dr. Castro-Flores's opinions were not vague and were supported by a history of treating, and the ALJ failed to consider the relevant factors for discrediting a treating source opinion. [#15 at 30-32; #19 at 2-3]. I respectfully disagree.

Dr. Castro-Flores offered two opinions in the medical record; both are substantially similar. First, on October 13, 2016, Dr. Castro-Flores opined, "I find that [Ms. Cerda] will be physically disabled for about 1 year to an indefinite period of time because of her illness. She has [HIV] infection and is needing continued medical treatment of this condition and its complications." [#11-7 at 292]. Second, on January 29, 2018, Dr. Castro-Flores opined, "I find [Ms. Cerda] unable to work for an indefinite period of time due to side effects of her HIV medication as well as her chronic pain." [*Id.* at 380]. The ALJ accorded these opinions very little weight because:

- Dr. Castro-Flores's own treatment notes did not document HIV complications,
- medication controlled Plaintiff's HIV, evidenced by objective testing in the record,
- the opinions were vague, with no function-by-function of Plaintiff's abilities, and
- the issue of disability is reserved for the Commissioner.

[#11-2 at 23]. I find no error with the ALJ's conclusion.

To start, "[m]edical source opinions on certain issues reserved to the Commissioner are not given controlling weight, even when provided by a treating physician." *Campos v. Astrue*, 373 F. App'x 880, 883 (10th Cir. 2010) (citing SSR 96-8p, 1996 WL 374184, at *8 n.8 (July 2, 1996));

*see also* 20 C.F.R. § 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Thus, there was no error in the ALJ discounting Dr. Castro-Flores's opinions that Ms. Cerda was disabled.

Next, the ALJ explained why she discredited Dr. Castro-Flores's opinions: "the provider's own treatment records do not document any complications from HIV. Instead the records overall indicate the claimant's HIV is controlled on medications, as indicated by lab results[.]" [#11-2 at 23]. These are adequate explanations. *See Barnhill-Stemley v. Colvin*, 607 F. App'x 811, 814-15 (10th Cir. 2015) ("Discrepancies between a treating physician's very restrictive functional assessment and that physician's contemporaneous treatment notes are a legitimate factor for discounting a medical opinion." (citing *White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2002)); *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.").

Finally, while Dr. Castro-Flores had the longest treating relationship with Ms. Cerda, the length of that relationship, without more, does not require the ALJ to afford deference to Dr. Castro-Flores's vague and unsubstantiated opinions. *See Walker v. Comm'r, Soc. Sec. Admin.*, No. 19-CV-00099-NYW, 2019 WL 6117801, at *9 (D. Colo. Nov. 15, 2019) (concluding that treatment relationship did not, in and of itself, require the ALJ to afford great weight to a treating source opinion where the ALJ gave legitimate reasons for affording little weight to the opinion). Indeed, treatment relationship is but one factor the ALJ should consider when weighing treating source opinions, but the ALJ's failure to consider <u>all</u> factors does not necessitate remand, especially when (as here) the ALJ articulates clear and legitimate reasons for discrediting a treating

source's opinion. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (holding that the ALJ's discussion of contrary, well-supported medical evidence provided a sufficient basis for giving a treating source opinion very little weight, as the absence of an explicit discussion of the "factors for each of the medical opinions before him [did] not prevent th[e] court from according [the ALJ's] decision meaningful review.").

C.   **Credibility**[4]

"'Credibility determinations are peculiarly the province of the finder of fact' and the [court] will uphold such determinations, so long as they are supported by substantial evidence." *Ruh v. Colvin*, No. 13-CV-01255-PAB, 2015 WL 1517392, at *2 (D. Colo. Mar. 30, 2015) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).  "Credibility determinations should not be conclusory, but instead 'closely and affirmatively linked' to evidence in the record." *Oliva v. Colvin*, No. 13-CV-02495-PAB, 2015 WL 5719645, at *7 (D. Colo. Sept. 30, 2015) (quoting *Kepler*, 68 F.3d at 391)).  In addition to considering the objective medical evidence, the ALJ must also consider several factors, including the claimant's daily activities; the location, duration, frequency, and intensity of her pain; aggravating and mitigating factors; any medication taken and its effectiveness in providing relief; other treatment received aside from medications; other measures utilized to alleviate pain, *i.e.*, lying down; and any other factors that may bear on the claimant's functional limitations.  *See* 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010).

---

[4] Though SSR 16-3p superseded SSR 96-7p and eliminated the term "credibility", SSR 16-3p offers the same guidelines for ALJs to use in assessing a claimant's subjective complaints of symptoms and pain.  *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  For this reason, the court will refer to this challenge as one speaking to Mr. Ritter's credibility. *See Watts v. Berryhill*, 705 F. App'x 759, 763 n.4 (10th Cir. 2017).

Ms. Cerda challenges the ALJ's credibility determination, because there is "overwhelming medical evidence substantiating [Plaintiff's] statements concerning chronic pain and limitations," and the ALJ failed the accord adequate consideration to Ms. Cerda's complaints regarding her limitations with standing and walking. *See* [#15 at 32-33]. The Commissioner argues, and the court agrees, that the ALJ properly explained her reasons for discrediting Ms. Cerda's subjective complaints of chronic pain and limitations on Plaintiff's functionality. [#18 at 13-15].

The ALJ recounted Ms. Cerda's subjective complaints of pain as well as her asserted limitations on her functionality, but concluded those allegations were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [#11-2 at 20]. The ALJ then undertook a comprehensive review of the medical record, including treatment notes and medical source opinions, and explained why that evidence supported the limitations imposed by the ALJ, rather than the severe limitations Ms. Cerda testified to. *See* [*id.* at 20-24]. Nothing more was required. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (explaining that where the ALJ affirmatively linked his credibility determination to substantial evidence, the court will not upset that determination).

While there may be evidence in the record that would lend itself to a finding that Ms. Cerda's testimony was more credible than the ALJ found, the court may not reweigh the evidence. *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). But, as the ALJ found, the medical record contains largely normal examination results despite documenting Ms. Cerda's subjective complaints of chronic pain and functional limitations. *See, e.g.*, [#11-7 at 302-05, 313-16, 330-32, 386-88; #11-8 at 448-51, 454, 459-62, 468, 476-77, 482, 496; #11-9 at 497-509, 549-55; #11-10 at 567-81, 582-85, 619-22, 625-28, 636-40, 642-46, 653-55; #11-11 at 697-704, 706, 718, 728-31, 739-42, 744-48, 750-54]. Ms. Cerda's disagreement with the ALJ's characterization does not

counsel otherwise, because inconsistencies in the objective medical evidence is a legitimate reason for discrediting a plaintiff's credibility. *See Branum v. Barnhart*, 385 F.3d 1268, 1274 (10th Cir. 2004) (noting that "the consistency or compatibility of nonmedical testimony with objective medical evidence" is a relevant factor in assessing a claimant's credibility); *accord* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). Thus, I find no error in the ALJ's assessment of Ms. Cerda's credibility. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (noting the court will uphold the ALJ's credibility determination if supported by substantial evidence, because "common sense, not technical perfection, is our guide.").

### D.       Supplementing the Record

Lastly, Ms. Cerda argues that the ALJ failed to supplement the record to account for any additional limitations caused by her HIV and her mini-stroke, including limitations on her ability to concentrate. *See* [#15 at 33-34]. Specifically, Ms. Cerda avers that Dr. Castro-Flores completed a Social Security Administration form that purports to identify marked functional limitations due to Plaintiff's HIV, but the form itself contains illegible notations, presumably from Dr. Castro-Flores. [*Id.* at 34]. Further, Plaintiff contends that evidence of her mini-stroke should have been enough for the ALJ to supplement the record. *See* [*id.*]. I respectfully disagree.

The duty to develop the record "is limited to fully and fairly developing the record as to material issues"; however, the burden lies with Ms. Cerda to demonstrate that further development is required. *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (brackets and internal quotation marks omitted). While Ms. Cerda may be correct that the form compiled by Dr. Castro-Flores contains illegible notations, this alone does not require the ALJ to further develop the

record.  This is because Ms. Cerda did not raise this point before the ALJ, *cf. id.* (explaining it is the claimant's burden to raise the need for a consultative examination before the ALJ, and the court will not impose such a requirement unless the record clearly reveals that need), and there was no finding by the ALJ that Dr. Castro-Flores's notes were inadequate—indeed, the ALJ concluded otherwise, *see Maes v. Astrue*, 522 F.3d 1093, 1097-98 (10th Cir. 2008) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation.").  Finally, the ALJ did consider Ms. Cerda's mini-stroke and found it was not a medically determinable impairment because there was no objective evidence or diagnosis corroborating Ms. Cerda's allegation, which is true, and if Ms. Cerda believed this to be a crucial issue for the ALJ's consideration, then it was her responsibility to develop this issue more fully.  *See Branum*, 385 F.3d at 1271 ("[I]n cases such as this one where the claimant was represented by counsel at the hearing before the ALJ, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." (internal quotations omitted)).  Thus, I find no error in this regard.

### E.    The RFC is Supported by Substantial Evidence

In sum, Ms. Cerda believes the medical evidence supports further limitations on her functionality, and ultimately supports a conclusion that she is disabled.  But even if the medical evidence could support further limitations than those found by the ALJ—a conclusion not clear from the record before the court—I agree with the Commissioner that substantial evidence supports the ALJ's RFC assessment.  *See Allman*, 813 F.3d at 1333 (explaining that it is the ALJ's,

not the court's, responsibility to resolve inconsistencies in the medical record). Ms. Cerda's arguments to the contrary invite the court to reweigh the medical evidence—an undertaking strictly prohibited. *See Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013). Accordingly, I find no error with the ALJ's RFC assessment.

## CONCLUSION

For the reasons stated herein, the court respectfully **AFFIRMS** the Commissioner's final decision.

DATED: July 27, 2020                                                BY THE COURT:

                                                                     _____
                                                                     Nina Y. Wang
                                                                     United States Magistrate Judge

21